**UNITED STATES of America, Plaintiff–Appellant,**

v.

**MICHELLE'S LOUNGE, 14100 S. Cicero, Crestwood, Illinois, et al., Defendants,**

and

**Clement Messino, Claimant–Appellee.**

**No. 95–1411.**

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1997.

Decided Oct. 3, 1997.

Joseph M. Ferguson (argued), Office of the United States Attorney, Civil Division, Appellate Section, Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, for Plaintiff–Appellant.

Joseph P. Storto, Storto, Kalal & Finn, Bensenville, IL, E.E. Edwards, III, Edwards & Simmons, Nashville, TN, for Claimant–Appellee.

Before CUDAHY, ESCHBACH and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

This court is called upon again to consider guarantees of due process for defendants in criminal and civil forfeiture cases. The path to this case began with *United States v. Moya–Gomez*, 860 F.2d 706 (7th Cir.1988). There government froze assets of a criminal defendant with an ex parte restraining order as a prelude to criminal forfeiture. Our concern under Constitution was that freeze could impinge on a criminal defendant's ability to retain counsel. Because a defendant does not have a right to spend funds that are not his to start with, we found that freeze did not absolutely violate Sixth Amendment. *Id.* at 725. But that same Sixth Amendment concern, working through Fifth Amendment, required more judicial protection for criminal defendant's right to counsel than an ex parte hearing afforded. If restraining order left

defendant without other assets to pay for his criminal defense, due process demanded that trial court hold a post-seizure adversary hearing. At hearing government would have to show probable cause of the assets' forfeitability. If the government could not jump past that threshold, perhaps because it chose not to reveal the secrets of its criminal case, the district court was to order the release of sufficient assets to pay reasonable attorney's fees. *Id.* at 729–30.

The next case extended the principles of *Moya–Gomez* beyond the strictly criminal setting. *United States v. Michelle's Lounge,* 39 F.3d 684 (7th Cir.1994) (*Michelle's Lounge I*).[1] There Clement Messino was enmeshed in parallel civil and criminal proceedings stemming from allegations of cocaine dealing. The government froze his assets pursuant to civil forfeiture under 21 U.S.C. § 881, and then indicted him for drugs and weapons violations. Again the Sixth Amendment animated our reasoning. We held that due process mandated "a post-seizure adversary hearing on probable cause when the district court has found that the government has seized through civil forfeiture all of the assets a criminal defendant needs to obtain counsel." *Id.* at 700–01. Exactly how far the criminal defendant's need to obtain counsel extended, we left unsettled. In particular, we did not squarely answer to what extent, if at all, a *Moya–Gomez* hearing would be appropriate for paying counsel in the civil forfeiture.

 Today we do. Again Clement Messino is the claimant, but it is the government that appeals. (We leave the case history to *Michelle's Lounge I,* 39 F.3d at 687–90.) The government asks us to decide whether due process requires a hearing on the payment of attorney's fees necessarily incurred *in the civil forum* for defending against civil forfeiture, but limited in purpose to the freeing of funds for the criminal defense. Put concretely, do the principles of *Michelle's Lounge I* grant Messino a hearing to try to free assets to pay for litigating *Michelle's Lounge I?* The district court thought that,

under *Michelle's Lounge I,* Messino was due a hearing. The government disagreed, arguing that *Michelle's Lounge I* mandated a hearing strictly to release assets to pay criminal counsel. As is its right, the government declined to appear. *Moya–Gomez,* 860 F.2d at 730. The district court then ordered assets released "for services rendered and to be rendered in this action to protect the 6th Amendment rights of claimant Clement Messino in the parallel criminal proceedings." The government appealed.

In the government's eyes, the alpha and omega of this case are two facts: Messino's lawyers appeared in a civil forum, and *Michelle's Lounge I* focused on lawyer's fees in a criminal forum. We recognize that the cleavage between the civil and the criminal is one of the deepest in the law. Civil forfeiture under 21 U.S.C. § 881 is an *in rem* action, *Austin v. United States,* 509 U.S. 602, 604–06, 113 S.Ct. 2801, 2803–04, 125 L.Ed.2d 488 (1993), with lighter evidentiary burdens and weaker procedural safeguards than criminal forfeiture would require. *Michelle's Lounge I,* 39 F.3d at 696. What constitutional protection a defendant or claimant may enjoy hinges on whether a particular legal action falls into the civil or criminal camp. *See, e.g., United States v. Ursery,* — U.S. —, —, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549 (1996) (holding that civil in rem forfeitures under 21 U.S.C. § 881 do not constitute punishment under the Double Jeopardy Clause). Were this a strictly civil proceeding, the government's reasoning would be more persuasive. And if the claimant Messino were seeking release of property to pay for counsel in matters not intimately bound up with his criminal defense, the government's case would be stronger.

But neither hypothetical is true. We have here, as we did in *Michelle's Lounge I,* parallel proceedings that can "set[ ] these two regimes on a collision course." *Michelle's Lounge I,* 39 F.3d at 696. At muddy intersection of joint civil and criminal proceedings, label "civil" cannot by itself foreclose our decision. The Supreme Court rejected just

---

1. For the benefit of legal scholars conducting "field research," we note that although the heading of *Michelle's Lounge I* (as well as the government's brief in that appeal) gives the location of defendant Michelle's Lounge as 14199 South Cicero in Crestwood, inspection of the record below indicates that 14100 is the proper street number.

this sort of argument-by-magic-words when it held that Eighth Amendment governs *in rem* forfeitures: "[T]he question is not ... whether forfeiture ... is civil or criminal, but rather whether it is punishment." *Austin*, 509 U.S. at 610, 113 S.Ct. at 2805; see *id.* at 616 n. 9, 113 S.Ct. at 2809 n. 9 (adding that reliance "on technical distinction between proceedings *in rem* and proceedings *in personam* ... would be misplaced"). *Cf. Ursery*, —— U.S. at ——, 116 S.Ct. at 2147 (noting that Double Jeopardy Clause directs courts "to consider whether proceedings are so punitive in fact as to 'persuade us that forfeiture proceeding[s] may not be legitimately viewed as civil in nature,' despite Congress' intent.") (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 366, 104 S.Ct. 1099, 1107, 79 L.Ed.2d 361 (1984)). There is no doubt that this civil forfeiture is ancillary to main criminal prosecution of Clement Messino. *See United States v. Underwood*, 122 F.3d 389 (7th Cir. 1997) (vacating Clement Messino's conviction and life sentence for cocaine conspiracy). Indeed, Congress crafted 21 U.S.C. § 881 with this specific use in mind: to add a civil arrow to prosecutor's quiver for fighting drug crimes. *Austin*, 509 *U.S. at* 620. *See also Ursery*, —— U.S. at ——, 116 S.Ct. at 2150 (Kennedy, J., concurring).

A more satisfactory angle under the Due Process Clause is to ask why the claimant is seeking an adversarial hearing. The reason, as in *Moya–Gomez*, is that the restraining order threatens to hamstring his criminal defense. The restraining order thus presses against a tender Sixth Amendment interest. Lawyers, like other people, generally want to get paid for their work. If the government freezes the defendant's assets, it can cripple the defendant's ability to retain "counsel of choice." *Moya–Gomez*, 860 F.2d at 720. That holds true for a defendant's direct criminal defense; and it holds true as well for hiring a lawyer for the civil forfeiture, though only to the extent needed to release funds to pay for the direct criminal defense. The latter is a corollary of the former. If a claimant cannot pay his lawyers to try for a partial lift of the restraining order, then the government will have secured a freeze not just of his assets, but of his criminal defense as well. Here Messino seeks to release as-

sets to pay attorney's fees that he had no real choice but to incur. His other option was to forego a paid criminal defense. To us, this fact is pivotal, and not the "talismanic invocation of the distinction between criminal and civil proceedings." *Michelle's Lounge I*, 39 F.3d at 698.

▪ Cast in terms of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the conclusion is the same. Under *Mathews*, we weigh three factors to define the strictures of due process in a given arena:

> First, the private interest that will be affected by official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. Here, the private interest, as in *Moya–Gomez*, is a qualified Sixth Amendment right—the right to counsel of choice-for which "the freeze operates as a permanent deprivation." *Moya–Gomez*, 860 F.2d at 726. If the defendant were denied that right in his criminal defense, the wound could be deep: wrongful imprisonment. Denying that same right in the civil forfeiture could bring about the same end for the same reason. Yet while the injury to the defendant would be identical in kind, the degree would be less. Contesting probable cause for a civil forfeiture is probably cheaper than mounting a full-scale criminal defense—which means that the likely injury to the defendant would be commensurately ameliorated.

Finally we must inquire into the government's interest, especially the extra burden placed on the government. The government's interest here is weak. *Michelle's Lounge I* already requires a hearing on probable cause of forfeitability. The practical effect of our ruling today would seem to be not to add a second hearing, but to expand the ambit of the original one. Encompassed now in the hearing would be the additional assets the defendant/claimant needs to pay his attorney's fees for the hearing itself.

The incremental cost of this to the government cannot be great. (This case comes in an unusual posture, for Messino faces atypically high attorney's fees for the civil proceeding. Messino's lawyers had to put in the extra work to litigate *Michelle's Lounge I*. Messino thus seeks a hearing not just to free assets for applying the rule of *Michelle's Lounge I*, but for establishing it as well. We cannot see why Messino should be penalized for these extra expenses.) A similar private interest (the Sixth Amendment), a reduced but still meaningful consequence for its wrongful denial, a minor incremental burden on the government: under the weight of these factors, the balance tips toward mandating an adversarial hearing.

We note that Messino prudently has refrained from asking for a hearing to release assets to pay all his attorney's fees in the civil forfeiture proceeding. He asks only for a hearing to lift the freeze on a fraction of those fees—only those attorney's fees needed to try to free up assets to pay for his criminal defense. Were he to seek a hearing for a broader purpose, the driving consideration here (his Sixth Amendment right to counsel) would dwindle, perhaps to nil. *See Lassiter v. Department of Social Servs.*, 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981); *United States v. 7108 West Grand Avenue*, 15 F.3d 632, 635 (1994). A trial court therefore should keep a watchful eye on a claim for attorney's fees to ensure that the lifeline to the Sixth Amendment is not snapped. *See Moya–Gomez*, 860 F.2d at 731.

■ There is a last matter worthy of mention. In appealing, the government did not wait for final judgment, nor did it ask the district judge for a certificate of appealability. Instead, the government asserted appellate jurisdiction under the collateral order doctrine, which treats a special class of non-final judgments as if they were final for 28 U.S.C. § 1291. This was a mistake. Congress and the Supreme Court have frowned on interlocutory appeals of right in all but "stringent" and "narrow" circumstances. *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867–68, 114 S.Ct. 1992, 1995–96, 128 L.Ed.2d 842 (1994). We think that this case falls far short of satisfying those circumstances. The government's only

justification is that, if the government had won today, Messino's lawyers would have wrongfully eaten away the forfeited assets, and the government might not have been able to get the money back. But there is no general rule that whenever a party foresees collecting less money at judgment than beforehand, the party may insist on an interlocutory appeal. *Id.* at 868, 114 S.Ct. at 1995 (holding irrelevant that a " 'particular injustice[ ]' " would be averted by prompt appeal) (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988)).

True, this court has ruled that it can immediately review pre-judgment grants of attorney's fees, where the paying party may not be able to recoup the monies later. *See Estate of Drayton v. Nelson*, 53 F.3d 165, 167 (7th Cir.1994); *People Who Care v. Rockford Bd. of Educ. Dist.* 205, 921 F.2d 132, 134–35 (7th Cir.1991). Whether the instant appeal even involves a grant of attorney's fees is unclear. The government is not footing the lawyer's bills, the defendant is—out of property that remains his (if frozen), at least until judgment against him under civil forfeiture. And even if *People Who Care* did encompass this case, the government would have to make some showing that recoupment would somehow be a problem. *See Construction Indus. Ret. Fund v. Kasper Trucking, Inc.*, 10 F.3d 465, 468 (7th Cir.1993) (finding appellate jurisdiction where recoupment looked unlikely for payments of less than $1000 to numerous truck drivers). Here the government made no showing of this sort; indeed, at oral argument the government conceded the point.

To be fair, the government's appellate counsel admitted orally that it should have sought a certificate of appealability from the district court. And the issue of jurisdiction is moot now, because the district court entered a final judgment in the meantime. But better that the government had been more judicious from the start.

AFFIRMED.