Daniel **TWEEDALL** and Debra Tweedall, Plaintiffs,

v.

Steven W. **FRITZ**, Phillip W. Schoffstall, William Miller, and the Evansville–Vanderburgh School Corporation, Defendants.

No. EV 97–6 C B/H.

United States District Court, S.D. Indiana, Evansville Division.

Dec. 19, 1997.

Jack N. Vanstone, Evansville, IN, James A. Kornblum, Lockyear & Kornblum, Evansville, IN, for Plaintiff.

James D. Johnson, Mattingly Rudolp Fine & Porter, Timothy A. Klinger, Kightlinger & Grey, Evansville, Indiana, for Defendant.

### ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment on Plaintiffs' claims that Defendants (1) violated Daniel Tweedall's ("Tweedall") Fourteenth Amendment procedural due process rights when they suspended him with pay and constructively discharged him, (2) sexually harassed Tweedall by falsely accusing him of sexual harassment, (3) defamed Tweedall by falsely accusing him of sexual harassment, (4) suspended and constructively discharged Tweedall because of his race, and (5) suspended and constructively discharged Tweedall because of his sex. Defendants' Motion for Summary Judgment is GRANTED on all five claims.

## I. BACKGROUND

Plaintiff, Daniel Tweedall ("Tweedall"),[1] was employed as a science teacher at McGary Middle School ("McGary") by the

---

1. Daniel Tweedall's wife, Debra Tweedall, is also a named plaintiff but had no established role in

Evansville–Vanderburgh School Corporation ("EVSC") during the 1994–95 school year. Tweedall Aff. ¶ 3. In early May, 1995, Cynthia Pate ("Pate"), another McGary teacher, informed William Miller ("Miller"), McGary's Principal, that she had overheard a conversation in which some of her students stated that Tweedall had been sexually inappropriate towards them, prompting Miller to begin an investigation into the matter.[2] Miller Depo. at 8, 11. That same day, Miller interviewed the students involved and notified Steven Fritz ("Fritz"), Executive Director for Student and Personnel Services, of the situation. *Id.* at 16. On May 4, 1995, Fritz informed Tweedall for the first time that some of his students had made allegations that he had used inappropriate language and had engaged in inappropriate touching of students.[3] *Id.* at ¶ 10; Fritz Aff. ¶ 4. At that time, Fritz also informed Tweedall that Child Protective Services would be consulted on the matter. Tweedall, however, was not told the names of his accusers or provided any specific details of their allegations. Tweedall Depo. at 12.

Subsequent to the May 4th meeting, Principal Miller expressed to Fritz concerns that Tweedall's continued presence at the school could jeopardize the integrity of the investigation. Miller Depo. at 21. Accordingly, on May 9, 1995, Fritz notified Tweedall that he was suspended with full pay and benefits pending the outcome of the investigation. Miller Depo. at 21; Fritz Aff. ¶ 6; Tweedall Depo. at 34. On May 17, 1995, Tweedall's attorney requested that EVSC reveal the general nature of the allegations against Tweedall. Fritz Aff. ¶ 7. Due to various

scheduling conflicts among all the parties, a hearing was not held until July 26, 1995, during which Tweedall was informed of the students' specific allegations and given an opportunity to respond.[4] *Id.* at ¶ 7–8; Tweedall Aff. ¶ 13. Tweedall stated his position in the presence of his attorney and a representative from the Evansville Teacher's Association ("ETA"), who were both in attendance throughout the proceedings. *Id.*

On August 25, 1995, Fritz advised Tweedall via letter that the Board of Trustees of EVSC would consider the issue of cancellation of his teaching contract at an October 2, 1995 hearing. *Id.* at ¶ 10; Tweedall Aff. ¶ 14. On August 29, 1995, Tweedall requested a written statement of the reasons the Board was considering for canceling his teaching contract. Fritz Aff. ¶ 10. Soon thereafter, EVSC provided Tweedall such a written statement of reasons in the form of a letter dated September 1, 1995. *Id.* at ¶ 11; Defendants' Exhibit N.

In a letter dated September 6, 1995, Tweedall also requested an evidentiary hearing. *Id.* at ¶ 12; Defendants' Exhibit O. The parties conducted a pre-conference hearing on September 11, 1995 and the following day Fritz informed Tweedall that an evidentiary hearing was scheduled for September 27, 1995. *Id.* at ¶ 13. The date for the evidentiary hearing was continued by agreement until December 4, 1995, however, Tweedall ultimately chose not to proceed with the hearing, having reached a settlement agreement ("the Agreement") with the EVSC immediately prior to the time the hearing was scheduled to commence.[5] *Id.* at ¶ 13, 15; Tweedall Aff. ¶ 15; Defendants' Exhibit Q.

---

the events that formed the basis of this suit and no separate cause of action on her part has been asserted. We therefore dismiss this action as to her, and shall refer to Plaintiff in singular fashion throughout this entry.

**2.** Examples of the students' allegations include: that Tweedall (1) massaged a female student's shoulders and moved his hand towards her breast, (2) patted another female student on the buttock and told her that she had a great body, (3) called another female student "brown sugar" and "chocolate delight," (4) called another female student a "foxy lady" with a nice shape for that outfit, (5) told another female student that she had a nice body and good looks, and (6) told another female student that she had a nice body and that if he were her age, he would try to "get

with her." *See* Transcription of July 26, 1995 hearing.

**3.** Principal Miller and Robert Frischkorn, McGary's Assistant Principal, were also present at the May 8th meeting.

**4.** The scheduling conflicts included Tweedall being out of town and Tweedall's attorney having a death in the family. Fritz Aff. ¶ 7.

**5.** The Agreement provided:

 1. Tweedall will be suspended without pay from December 18, 1995 until the commencement of the 1996/1997 academic year subject to successful completion of the terms of this Agreement.

Pursuant to the Agreement, Tweedall was suspended without pay effective December 19, 1995 until the commencement of the 1996–97 school year. *Id.* at ¶ 16. Both Tweedall and EVSC ultimately fulfilled all their obligations under the Agreement,[6] Tweedall Depo. at 90–91, and, at the conclusion of his suspension, Tweedall was reassigned to teach at the Stanley Hall Enrichment Center ("Stanley Hall") beginning on August 22, 1996. Tweedall Aff. ¶ 17.

Tweedall did not have a smooth start at Stanley Hall. On September 4, 1996, Stanley Hall's principal, Patricia Cato, advised Tweedall not to have any contact with student Jennifer Collins at the request of Collins' mother, Donna Hagerdorn. *Id.* at 108–109; Tweedall Aff. ¶ 18. Tweedall accepted Cato's directive, but felt as if he were a "marked man." Tweedall Depo. at 109.

The following week, on September 9, 1996, Tweedall experienced an emotional breakdown after patting one of his female, African–American students on the shoulder. Tweedall Aff. ¶ 20. That same day, Tweedall cleaned out his desk, gave school officials a doctor's statement, and left the building. *Id.* at ¶ 20. Tweedall has not reported to work since and currently is on disability leave. *Id.* at ¶ 21.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). However, we must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel*, 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

## III. DISCUSSION

Defendants move the Court for summary judgment on all five counts of Plaintiff's Amended Complaint, including claims that Defendants: (1) violated Tweedall's procedural due process rights, (2) sexually harassed him, (3) defamed him, (4) suspended

2. Tweedall will be reassigned and transferred to another position within his teaching certification, outside of the Harrison attendance district.

3. Tweedall will complete, at his own expense, a counseling program as prescribed by a Board selected and approved counselor. And, that the Board will have the option to require a second evaluation at the Board's expense, prior to the 1996/1997 academic year. Tweedall will have to successfully complete the counseling program and be certified appropriate for teaching by both the counseling program and any second evaluation.

4. Tweedall is to have no contact with any of the children involved in this proceeding or the faculty witnesses at McGary Middle School whom the administration intends to call to testify.

5. This proceeding will remain open until it is resolved, at which time the hearing will be concluded and the evidence and the charges will remain a part of Tweedall's file as well as anything Tweedall wishes to place in his file.

6. Breach of this agreement by either party will entitle either party to request that the hearing be reinstated.

Defendants' Exhibit Q.

6. Pursuant to the Agreement, Tweedall was evaluated by Bob Pope, an accredited social worker, and Louis Cady, M.D. Tweedall Depo. at 94. Both concluded that Tweedall was not a danger to children and was fit to teach. *Id.*

and constructively discharged him because of his race, and (5) suspended and constructively discharged him because of his sex. Although Plaintiff puts forth five counts, the heart of this litigation is the due process claim.[7]

### A) PROCEDURAL DUE PROCESS CLAIM

Plaintiff contends that Defendants deprived him of his Fourteenth Amendment procedural due process rights, in violation of 42 U.S.C. § 1983, when they suspended and then constructively discharged him. Defendants respond that Tweedall's suspension and constructive discharge were carried out consistent with all appropriate procedural due process standards.

A successful 42 U.S.C. § 1983 action must possess two elements: "the conduct complained of must have been under color of state law, and it must have deprived a person of rights, privileges, or immunities guaranteed by the Constitution or laws of the United States." *Larsen v. City of Beloit*, No. 97–1831, 1997 WL 754606, *4 (7th Cir. Dec.5, 1997). In this case, Defendants concede that they were operating under color of state law when they suspended and constructively discharged Tweedall. Thus, the only remaining issue is whether Defendants deprived Tweedall of his procedural due process rights.

 Procedural due process claims require a two-step analysis. *See Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). The first step requires a determina-

tion of whether the plaintiff has been deprived of a protected property or liberty interest; the second requires a determination of what process is due. *See id.; Wallace v. Tilley*, 41 F.3d 296, 299 (7th Cir.1994). Regarding the first step, the plaintiff bears the burden of proving that an interest entitled to Fourteenth Amendment procedural protection exists. *See Larsen v. City of Beloit, supra.* Defendants concede that Tweedall's constructive discharge and suspension with pay constitute deprivations of a property interest entitled to Fourteenth Amendment protection.[8]

Determining what process Tweedall was due includes examining what process he was given. Regarding his suspension with pay, Tweedall was provided scant pre-deprivation process. Defendants simply informed Tweedall the day before his suspension that some of his students had accused him of "inappropriate language and touching" and that the child protection team would be consulted on the matter. Tweedall was not told who his accusers were or the specifics of their allegations.

Although Tweedall received scant pre-deprivation process, his post-deprivation process was substantial. Tweedall and his attorney attended a July 26, 1995 hearing, during which Tweedall was informed of the students' allegations and allowed to respond.[9] Defendants provided the specific details of the allegations and the names of his student accusers. During the hearing, Tweedall was provided ample opportunity to present his

---

**7.** The other four claims border on being legally frivolous as addressed later in this entry.

**8.** Tweedall's contractual rights under the EVSC–Evansville Teacher's Association collective bargaining agreement presumably constitute the protected property interest implicated by Tweedall's suspension with pay. Plaintiff cites three different provisions of the agreement that the suspension allegedly violated, including (1) "Advanced warning of the possible disciplinary consequences of an action should be given to the teacher, whenever possible," (section 26 at 1); (2) "The teacher will be given an opportunity to correct the wrongdoing or problem," (section 27 at 1); and (3) "The teacher will be warned that if the action(s) in question continue, disciplinary action may be taken up to and including dismissal of the teacher," (section 27 at 2). Defendants' Exhibit S. Notably, although reputation alone is

not an interest protected by the Due Process Clause, the stigma attached to Tweedall's suspension may implicate a protected liberty interest because the allegations are severe enough to impact Tweedall's employment opportunities. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir.1997); *McDaniels v. Flick*, 59 F.3d 446, 455 (3rd Cir.1995) (stigma from college professor's suspension for sexual harassing students implicated protected liberty interest).

**9.** The fact that the conference was scheduled nearly two and a half months after Tweedall's suspension is a result of scheduling conflicts by *all* the parties, including Tweedall and his counsel. Fritz Aff. ¶ 7. Attempts to schedule a hearing began on May 17, 1995, eight days after Tweedall's suspension. *Id.*

position and his attorney and an ETA representative were permitted to remain in attendance throughout the proceedings.

Tweedall, as a member of the ETA, also had the opportunity to avail himself of the grievance procedures set forth in the collective bargaining agreement between the union and the EVSC. *See* Exhibit S of Fritz Affidavit. The grievance procedures provided Tweedall an opportunity to file a grievance within seven (7) teacher attendance days after his suspension. The first step in the procedure is to file an informal grievance with the principal within seven (7) teacher attendance days of the grievance, after which the principal has seven (7) teacher attendance days to orally respond. Within five (5) teacher attendance days of the oral answer, if the grievance is not resolved, a written grievance may be filed with the principal. The principal must answer that grievance in writing within seven (7) days teacher attendance days. In the event the grievance is still not resolved, it may be filed with the superintendent within ten (10) days of receipt of the principal's written answer. The grievant may submit any relevant materials and evidence and, pursuant to the grievant's request, will be permitted a hearing before the superintendent before the issuance of a written decision. The written decision of the superintendent will be rendered within fifteen (15) teacher attendance days of receipt of such written grievance, with up to ten (10) additional teacher attendance days afforded if the superintendent determines further investigation is necessary. Although Tweedall had the opportunity to avail himself of these grievance procedures, he did not.[10]

Plaintiff contends that pursuing the grievance procedure would have been futile because (1) the procedure is lengthy, and (2) "the persons who would be involved in the [g]rievance [p]rocedure are the same persons who are depriving [Tweedall] of his procedural due process rights." That the proce-

dure is lengthy is merely indicative of the amount of process afforded under the system. The procedure would have allowed Tweedall to articulate fully his position to Principal Miller and the superintendent. That the people he would have appealed to were the ones who had allegedly denied him due process is wholly irrelevant. Indeed, by availing himself of the grievance procedure, Tweedall would have compelled Principal Miller and the superintendent to provide Tweedall with the process he claims he was denied. Tweedall fails to establish that proceeding with the grievance procedure would have been futile. The procedure provided Tweedall significant protections and he simply chose not to avail himself of them. *See Buttitta v. City of Chicago,* 9 F.3d 1198, 1206 (7th Cir.1993) (post-deprivation grievance procedure in collective bargaining agreement satisfied due process requirements); *Winston v. United States Postal Service,* 585 F.2d 198, 209–10 (7th Cir.1978) (grievance procedure under a collective bargaining agreement can satisfy due process).

■ Would the aforementioned processes have afforded Tweedall the process he was due in connection with his suspension with pay? "It is by now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar,* —— U.S. ——, ——, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997) (citations omitted). To determine what process is constitutionally due, we must balance three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguard; and finally, the Government's interest.

---

10. Plaintiff asserts that Defendants violated three collective bargaining provisions unrelated to the grievance procedure, allegedly demonstrating a violation of his due process rights. *See infra* note 8 (sets forth alleged violations of collective bargaining agreement). Plaintiff's analysis is misguided. Whether Defendants followed the collective bargaining agreement is neither here nor there; the due process clause is not a means

to enforce a contract under state law. *See Albiero v. City of Kankakee,* 122 F.3d 417, 420 (7th Cir.1997); *Archie v. Racine,* 847 F.2d 1211, 1215–18 (7th Cir.1988). Rather, the procedural due process issue relates to whether the process that Tweedall *did* receive was sufficient under the Fourteenth Amendment; not whether state law afforded him additional process. *Id.*

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also Gilbert,* —— U.S. at ——, 117 S.Ct. at 1812; *United States v. Michelle's Lounge,* 126 F.3d 1006, 1008 (7th Cir.1997).

Applying these factors, the Supreme Court and the Seventh Circuit have consistently held that "where a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar, supra; see also Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915–16, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986); *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). However, when a public employee is discharged, a pre-deprivation hearing is almost always required because of the compelling private interest in one's employment. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *but see Washington Teachers' Union Local #6 v. Bd. of Educ. of the District of Columbia,* 109 F.3d 774, 780 (D.D.C.1997). Conversely, in the case of a suspension, pre-deprivation hearings are not always required because of the lessened private interest at stake. *See Jones v. City of Gary, Indiana,* 57 F.3d 1435 (7th Cir.1995); *Winegar v. Des Moines Independent Community School District,* 20 F.3d 895, 900 (8th Cir.1994) (private interest in suspension far less than in discharge).

Applying the *Mathews* balancing test to the instant case, it is evident that Tweedall's primary interest was not monetary since the initial suspension was with full pay and benefits. Instead, his interest arose from the apparent stigmatization associated with the suspension. *See Lawson v. Sheriff of Tippecanoe County, Indiana,* 725 F.2d 1136, 1138 (7th Cir.1984); *Endicott v. Huddleston,* 644 F.2d 1208, 1216 (7th Cir.1980). Being suspended for allegations of sexual misconduct as a middle school teacher in a close-knit community has obvious, significant, non-monetary consequences. Teachers are public figures and their work life is inevitably exposed to the public eye. Consequently, a teacher's suspension carries with it the potential of a devastating impact on that teacher's reputation. In this case, it is difficult if not impossible to quantify the impact Tweedall's suspension, in and of itself, had on his reputation, but presumably, it was significant.

Defendants' actions, however, were compelled by obvious exigencies, which circumstance reduces the risk of erroneous deprivation. The allegations had come from at least three, separate middle school students and were determined to be credible by school officials on the basis of their thorough questioning of these students immediately after the allegations surfaced. *See* Transcription of July 26, 1995 hearing. While Plaintiff suggests that the students' motives may have been suspect, an investigation of the accusations indicated otherwise. The students did not report Tweedall to the school authorities in an attempt to have him disciplined; rather, their allegations were discovered by a teacher who overheard some of her students discussing the matter. Defendants' actions in response to those allegations were legally appropriate: they established a reasonable basis for suspending Tweedall and took steps to reduce the risk of an erroneous deprivation.

Providing Tweedall with additional procedures would have been in any event of minimal value. The first post-deprivation hearing on this matter did not resolve the dispute, suggesting that a pre-deprivation hearing would have come to the same end. In fact, had a pre-deprivation hearing occurred without the benefit of a complete investigation, it might have seriously prejudiced Tweedall.

Finally, we consider the government's interest and, in this case, it is a significant factor: the school was faced with a need to protect middle school children from their teacher's sexual misconduct.[11] *See Green v. Bd. of School Comm'rs of the City of India-*

---

11. Indeed, a failure by EVSC to take steps to reasonably protect its students from the sexual misconduct of its employees could expose it to liability under Title IX and 42 U.S.C. § 1983. *See Smith v. Metropolitan School District Perry Township,* 128 F.3d 1014 (7th Cir.1997) (Title IX); *Nabozny v. Podlesny,* 92 F.3d 446 (7th Cir. 1996) (Section 1983).

*napolis,* 716 F.2d 1191, 1192–93 (7th Cir. 1983) (substantial interest in protecting middle-school-aged students from a school employee's sexually suggestive touching and language); *Rubin v. Ikenberry,* 933 F.Supp. 1425, 1439 (C.D.Ill.1996) (substantial interest in protecting students from sexual harassment). Tweedall, like most teachers, held a special position in the community; he was entrusted to teach the children properly and guide them through some of their most impressionable years. Because teachers are in a unique position of trust and authority, credible allegations of sexual misconduct are rightfully taken very seriously. The immediacy of Tweedall's suspension reflected the serious nature of the allegations and was prompted for two compelling reasons: first, the investigation was ongoing and Tweedall's presence at the school could have jeopardized the outcome; and, second, if the allegations proved true, allowing Tweedall to continue teaching pending a hearing would have enabled him to engage in other, similar conduct.

Although Tweedall's interest in protecting his reputation is substantial, the government's interest in protecting children from a teacher's sexual misconduct is urgent and extreme. Defendants' efforts to balance these interests, by allowing Tweedall to continue teaching during the investigation, ultimately had to yield to the reality that by allowing him to continue teaching, the integrity of the investigation could be jeopardized. Thus Defendants decided to suspend Tweedall with pay and that action was based on credible accusations and carried with it a low risk of erroneous deprivation. Tweedall's post-deprivation remedies were available to him within a week after his suspension, and he was given ample opportunity to challenge the actions against him. When suspending him with pay, Defendants did not deprive Tweedall of his procedural due process rights. *See Jones v. City of Gary, Indiana,* 57 F.3d 1435 (7th Cir.1995) (a post-suspension hearing was sufficient due process for a firefighter suspended *without* pay for failing to report to work; a pre-deprivation hearing was not necessary).

We believe this holding to be consistent with the Supreme Court's recent decision in *Gilbert v. Homar,* —— U.S. ——, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). In that case, a police officer employed by East Stroudsburg University was suspended without pay following his arrest by the Pennsylvania State Police ("PSP") on drug-related charges. *Id.,* at ——, 117 S.Ct. at 1810. The officer's suspension was immediate and without pre-deprivation process. *Id.* Although the PSP eventually dropped the charges, the University continued the officer's suspension without providing a hearing for the officer for an additional two weeks. *Id.* Thus, the first hearing on the suspension did not occur until more than three weeks following the suspension. *Id.* In addition, at the first hearing, the officer was not provided the specific information that supplied the basis for his suspension. *Id.*

Based on the *Mathews* balancing test, the Supreme Court determined that the University had not violated the officer's procedural due process rights by failing to provide him with a pre-deprivation hearing. *Id.,* —— U.S. at —— – ——, 117 S.Ct. at 1813–14. Specifically, it held that the officer's interest in his paycheck was outweighed by the State's interest in immediately suspending "employees who occupy positions of great public trust and high public visibility" when they are charged with a felony. *Id.* Additionally, the risk of erroneous deprivation and the value of additional procedures at that juncture were both determined to be low because "the purpose of any pre-suspension hearing would be to assure that there are reasonable grounds to support the suspension without pay [and] … that has already been assured by the arrest and the filing of charges." *Id.,* at —— – ——, 117 S.Ct. at 1813–14.

Similar circumstances pertain in the instant case. An employee occupying a position of great public trust was suspended without a pre-deprivation hearing based on credible accusations of a substantial breach of the public trust by that employee. In both cases, reliable grounds supported the accusations: felony charges had been filed in *Gilbert* and, in the instant case, multiple, credible accusers came forward. Certain distinctions between *Gilbert* and our case further confirm our view that Tweedall was accorded due process: (1) the suspension in

*Gilbert* was without pay; the suspension here occurred with full pay and benefits; and (2) the officer in *Gilbert* was accused on a non-violent drug offense, whereas Tweedall was accused of sexual misconduct towards vulnerable, middle-school-age girls. Consistent with the Supreme Court's reasoning in *Gilbert,* therefore, we GRANT Defendants' Motion for Summary Judgment on Plaintiff's claim that his due process rights were violated when he was suspended with pay.

Plaintiff also claims that he was denied due process by Defendants' constructive discharge of him.[12] In response, Defendants contend that Tweedall was not constructively discharged, and even if he was, his due process rights were not violated.

■■■ "A constructive discharge exists if the employer has 'made the working conditions so intolerable as to force a reasonable employee to leave.'" *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1017 (7th Cir.1996) *quoting Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 517 (7th Cir.1996); *see also Brown v. Ameritech Corp.,* 128 F.3d 605, 608 (7th Cir.1997). Plaintiff describes the intolerable working conditions that led to his constructive discharge as follows:

> ... he is on Disability Leave because he suffers from Post-traumatic Stress Disorder, which was caused by the failure of the School Corporation to provide him with Procedural Due Process of Law. Having instilled in him the horror and fear of touching female students, the School Corporation sent him to Stanley Hall, told him he was under a watchful eye, and instructed him to teach sitting next to a female student.

Plaintiff's Response Brief at 23. Plaintiff, however, fails to establish that Defendants created these conditions with the intent to force him to quit. Defendants' actions resulted from its intent to give Tweedall continued appropriate employment while it pursued the investigation of the allegations against him. No evidence before the Court demonstrates that Defendants intended for Tweedall to quit or that their actions were calculated to bring about that result.

Assuming *arguendo* that Tweedall was constructively discharged, Plaintiff's claim nonetheless fails because Defendants again provided him with due process protections. First, as previously noted, Tweedall and his attorney attended a July 26, 1995 hearing, during which Tweedall was informed of the students' allegations and allowed to respond. On August 29, 1995, Tweedall was provided a written statement of the reasons that the Board was considering canceling his contract. The EVSC Board of Trustees was scheduled to conduct an evidentiary hearing that would have allowed Tweedall once again to present his position, but that hearing never took place, because Tweedall chose to waive it and enter into a settlement agreement with the EVSC. Tweedall could also have availed himself of the grievance procedures set forth in ETS's collective bargaining agreement with EVSC, but again chose not to. *See supra* at pp. 1130–31. Tweedall's choice to waive the evidentiary hearing as well as the collective bargaining grievance procedures was voluntary; he cannot now hope to be heard to complain of being denied that process. *See Cliff v. Bd. of School Commissioners of the City of Indianapolis, Indiana,* 42 F.3d 403, 414 (7th Cir.1994); *Pitts v. Bd. of Educ. of U.S.D. 305,* 869 F.2d 555, 557 (10th Cir.1989). The July 26, 1995 hearing, the written statement of reasons, the evidentiary hearing, and the grievance procedures clearly comport with due process standards. *See Vukadinovich v. Bd. of School Trustees of the Michigan City Area Schools,* 978 F.2d 403, 413 (7th Cir.1992); *Green v. Bd. of School Commissioners of the City of Indianapolis,* 716 F.2d 1191 (7th Cir.1983). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's claim that his due process rights were violated by his constructive discharge is GRANTED.

## B) *OTHER CLAIMS*

### 1. *Sexual Harassment*

■■■ Tweedall also contends that Defendants sexually harassed him by falsely accusing him of sexual harassment. This claim has several fatal deficiencies. First and fore-

---

**12.** Plaintiff's constructive discharge claim presumes that he is no longer employed by the EVSC. However, Plaintiff concedes that he re- mains under contract to teach with the EVSC and is currently on disability leave. *See* Plaintiff's Response Brief at 23.

most, the threshold question in a sexual harassment claim is whether the plaintiff was harassed "because of" their sex.[13] *See Doe v. City of Belleville, Illinois,* 119 F.3d 563, 569 (7th Cir.1997); *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235, 1238 (7th Cir.1989). Plaintiff fails to put forth *any* evidence that Defendants' actions were "because of" his sex. *See Turgeon v. Premark Int'l, Inc.,* 87 F.3d 218, 221 (7th Cir.1996) ("plaintiff must show that gender played a role in [the] employment decision"). Second, Defendants did not initiate the accusations of sexual harassment against Tweedall; his students did. Defendants simply investigated the allegations, but never officially concluded that Tweedall had engaged in sexual harassment. The EVSC was set to make an assessment of those allegations at an evidentiary hearing scheduled for December 4, 1996, but, as we have previously noted, Tweedall and EVSC reached a settlement prior to the hearing. Third, Plaintiff's premise that a false claim of sexual harassment is itself a form of sexual harassment is entirely erroneous in the factual context of this case. False claims of sexual harassment are themselves sexual harassment *only* if they were made because of the accused's sex and were, in and of themselves, harassing. *See McDonnell v. Cisneros,* 84 F.3d 256, 259 (7th Cir.1996) (examples include: unfounded accusations that a woman worker is a "whore," a siren, carrying on with coworkers, "sleeping her way to the top"). No evidence substantiates Tweedall's contention that EVSC proceeded against him because of his sex or that in investigating the students' allegations they acted in a harassing manner. In short, Plaintiff's sexual harassment claim is completely baseless and without merit. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's sexual harassment claim is GRANTED.

### 2. *Racial Discrimination Claim*

■ Plaintiff asserts as a Title VII violation that Principal Miller suspended and constructively discharged him because his student accusers were African–American.

Defendants rejoin that Plaintiff fails to establish a prima facie case and that Defendants' legitimate, non-discriminatory reasons for suspending and constructively discharging Tweedall were not pretextual.

Plaintiff lacks direct evidence of discrimination but that is not necessarily fatal to his claim; indirect proof may be sufficient under the so-called *McDonnell–Douglas* framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This analysis requires that Plaintiff first set out a prima facie case of discrimination by showing that (1) he was in a protected class, (2) his job performance met Defendants' legitimate expectations, (3) he suffered an adverse employment decision, and (4) similarly-situated employees outside the protected class were treated more favorably. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Essex v. United Parcel Service,* 111 F.3d 1304, 1308 (7th Cir.1997). Success in establishing these elements gives rise to a rebuttable presumption of discrimination, shifting the burden of production to Defendants to articulate a legitimate, non-discriminatory reason for discharging Tweedall. *Id.* Defendants' burden is one of production only; the burden of persuasion rests at all times on Plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *Equal Emp. Opportunity Comm'n v. Our Lady of the Resurrection Medical Center,* 77 F.3d 145, 149 (7th Cir.1996). If Defendants articulate a legitimate, non-discriminatory reason, the presumption dissolves, and the burden moves to Plaintiff to prove that the proffered reason is a pretext. *Id.*

Defendants initially contend that Plaintiff has failed to establish that similarly-situated, non-white employees were treated more favorably than him. Plaintiff makes no response. In fact, Plaintiff's argument that Principal Miller was more protective of African–American students than white students suggests that Tweedall's race was irrelevant to Miller and that only the students' race mattered to him.[14] Further, the Court has

---

**13.** That Tweedall is a man does not, by itself, preclude him from recovering under Title VII. *See Brill v. Lante Corp.,* 119 F.3d 1266, 1270 (7th Cir.1997).

**14.** Plaintiff has also failed to show how a similarly-situated teacher was treated more favorably when the students involved were white.

been presented no evidence to satisfy the "similarly-situated" element. For these reasons, Plaintiff fails to establish a prima facie case.

Assuming *arguendo* that Plaintiff could establish a prima facie case, the claim nonetheless fails. Defendants have put forth two legitimate, nondiscriminatory reasons for its actions towards Tweedall: (1) to protect the students from sexual harassment, and (2) to preserve the integrity of the ongoing investigation into the allegations against Tweedall. Plaintiff maintains that Defendants' reasons were pretextual for race discrimination, citing the following excerpt from Tweedall's deposition:

Q What about Mr. Miller? What did Mr. Miller do that constitutes malicious prosecution, if anything? [15]

A It goes back to something that Mr. Miller told me a long time ago that stuck in my mind as being strange. He told me one time, he said, you know, me and my job here is to protect the black students, and it stuck in my mind because I kept thinking, well, why would you say black students? Why wouldn't you say all students or all people? And I commented at the time, I said, I think they all deserve the same protection, and he said that's why he was there, and knowing this when I went in there, I knew it wasn't going to be a fair shake.

Tweedall Depo. at 181. These comments, attributed to Principal Miller, when taken in context, do not evidence discrimination. Miller expresses nothing more than a heightened potential for discrimination against African–American students, reinforcing a duty on his part to protect them. Erasing any doubt that his first comment was discriminatory, Miller's concluding remark reflects his agreement that all students deserved the same protection. This excerpt from Tweedall's deposition is the only evidence cited by Plaintiff of racial discrimination. It obviously provides no basis on which a reasonable jury could conclude that Defendants' reasons for dealing with Plaintiff as the school did

were pretextual. Accordingly, Defendants' Motion for Summary Judgment on these grounds is GRANTED.

### 3. *Defamation and Sex Discrimination Claims*

Plaintiff has, through his briefing, abandoned both of these claims; the defamation claim, by express waiver, and the sex discrimination claim, by implication. Regarding the defamation claim, Plaintiff concedes that:

Dan Tweedall has been defamed; however, the witness identified did not confirm that Evansville Vanderburgh School Corporation was the source. Dan [Tweedall] does not, at this time, have evidence that the source of the defamation was the Defendants.

Plaintiff's Response Brief at 26. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's defamation claim is GRANTED.

Plaintiff fails to address the sexual discrimination claim in his Response Brief. Nor does he put forth *any* credible evidence that Defendants discriminated against him on the grounds of sex. This claim is premised on nothing more than the fact that Tweedall's student accusers were female and Tweedall was male. Obviously, such a fact, standing alone, does not evidence sex discrimination. *See Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir.1997). Accordingly, Defendants Motion for Summary Judgment on Plaintiff's sex discrimination claim must also be GRANTED.

## IV. *CONCLUSION*

For all the aforementioned reasons, Defendants' Motion for Summary Judgment on Plaintiff's procedural due process claim is GRANTED because Defendants afforded Tweedall sufficient procedural safeguards when he was suspended with pay and constructively discharged. Defendants' Motion for Summary Judgment on Plaintiff's sexual harassment claim is GRANTED because Plaintiff failed to present evidence that he was falsely accused of sexual harassment because of his sex. Defendants' Motion for

---

**15.** Plaintiff's original Complaint included a claim for malicious prosecution which was later dropped in the amended pleading.

Summary Judgment on Plaintiff's race discrimination claim is GRANTED because Plaintiff failed to put forth a prima facie case or establish that Defendants' legitimate, nondiscriminatory reasons were pretextual. Defendants' Motion for Summary Judgment on Plaintiff's defamation claim is GRANTED because Plaintiff conceded there was no basis for such relief. Defendants' Motion for Summary Judgment on Plaintiff's sexual discrimination is GRANTED because Plaintiff failed to establish a prima facie case.