**Renaldo HERNANDEZ,**
**Plaintiff–Appellant,**

**and**

**David A. Cerda, Appellant,**

v.

**JOLIET POLICE DEPARTMENT,**
**Francis Ruettiger, Tom Stein, et**
**al., Defendants–Appellees.**

**No. 98–3558.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1999.

Decided Nov. 22, 1999.

David A. Cerda (argued), Cerda & Associates, Chicago, IL, for Plaintiff–Appellant and Pro Se.

Thomas A. Thanas, Office of the Corporation Counsel, Joliet, IL, for Defendant–Appellee Joliet Police Department.

Kelly A. Kirwin (argued), Thomas A. Thanas, Office of the Corporation Counsel, Joliet, IL, for Defendants–Appellees Francis Ruettiger, Tom Stein.

James G. Sotos, Jason Rose (argued), Hervas, Sotos & Condon, Itasca, IL, for Defendants–Appellees Douglas DeBoer, Illinois State's Attorney's Office of Will County.

Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

On October 27, 1997, plaintiff-appellant Renaldo Hernandez ("Hernandez") filed this action in federal court against the Joliet, Illinois Police Department and two of its officers, Francis Ruettiger and Thomas Stein, and against the Illinois State's Attorney's Office of Will County and the First Assistant State's Attorney, Douglas DeBoer, alleging a violation of 42 U.S.C. § 1983, as well as supplemental claims under Illinois law for libel and slander, and intentional infliction of emotional distress.

On May 13, 1998, the district court granted the individual defendants' motions to dismiss as to the plaintiff's § 1983 claim but, at the same time, found that Hernandez' amended complaint stated a claim under 42 U.S.C. § 1985(3) against the individual defendants Francis Ruettiger ("Ruettiger"), Thomas Stein ("Stein"), and Douglas DeBoer ("DeBoer"). Pursuant to Rule 11 of the Federal Rules of Civil Procedure, the trial court also granted the Will County State's Attorney's Office's motion for sanctions against Hernandez' attorney, David Cerda, for filing a frivolous claim against an arm of the State. On September 9, 1998, the trial judge granted all the defendants' respective motions for summary judgment as to Hernandez' civil rights claims and declined to exercise supplemental jurisdiction over the remaining state law claims, dismissing them without prejudice. Hernandez and Cerda appeal.

## I. BACKGROUND

Renaldo Hernandez, a Mexican–American, worked for the Joliet, Illinois, Police Department as a police officer from 1973–1994. During his employment with the Police Department, Hernandez served as a vice-president of the Afro–Latino Policemen's Association, which was formed on April 4, 1976. In 1980, Hernandez participated in the Association's efforts to have the City of Joliet accept and implement an affirmative action plan.

Defendant Stein was employed by the Police Department in 1981. During the time that Hernandez served as vice-president of the Association, he overheard Officer Stein criticize affirmative action, saying that those "nigger" and "spic" organizations were trying to get something for nothing. Furthermore, during his deposition, Stein admitted that he was in fact opposed to affirmative action. Defendant Ruettiger joined the Joliet Police Department as an officer in 1985. Hernandez presented evidence that Ruettiger, on one occasion in 1989, used the word "nigger" but not in connection with either the plaintiff or the Association.

Hernandez left the Joliet Police Department in 1994 after he developed a psychiatric disorder referred to as Obsessive/Compulsive Disorder. After leaving the Department, Hernandez applied for a duty-related disability pension, and on February 29, 1996, the day his disability pension application was to be heard, Hernandez had an argument with Officer Stein, the then President of the Joliet Police Pension Board. As a result of this argument, Stein recused himself from consideration of Hernandez' application.

Approximately six months later, on August 1, 1996, Hernandez encountered Detective Benjamin Billups (an African–American) of the Joliet Police Department at the local courthouse and asked him

whether "those bigots" at the Joliet Police Department had given him his "stripes" yet. Hernandez went on further and informed Billups of the argument he and Stein had on the date of his pension hearing. Officer Ruettiger, who was also at the courthouse and in the immediate presence of Billups and Hernandez, claimed to have overheard Hernandez state that Stein had wanted to fight Hernandez on the day of the pension board hearing but then backed down. According to Ruettiger, Hernandez also claimed that he "would have kicked [Stein's] ass" if a physical altercation had occurred and went on to refer to Stein as a "bald headed, bigot pussy." [1] Shortly thereafter, Ruettiger informed Stein about the courthouse encounter and the threats that Hernandez had allegedly made against Stein. Stein said that he would think about it and, the next day, Stein asked Ruettiger to write an informational report about the incident, and Ruettiger did.[2]

Officer Stein took the report to defendant DeBoer, the First Assistant State's Attorney for Will County, and asked him if criminal charges could be filed against Hernandez. After reviewing the report, DeBoer advised Stein that neither Hernandez' words nor his actions rose to the level of criminal conduct and thus a criminal prosecution would not be appropriate but suggested that if Stein was concerned about the alleged threats he received he should contact Hernandez' employer at the Will County Regional Office of Education.[3] Stein called David Levek ("Levek"), Hernandez' supervisor, from DeBoer's office and in DeBoer's presence (thus, according to Hernandez, again implicating DeBoer in the alleged conspiracy), and told him about the alleged threats Hernandez had made. As a result of the telephone call from Stein, Levek called Hernandez into his

office for an explanation. After his discussion with Hernandez, Levek concluded that Stein's complaint regarding Hernandez was unwarranted and unprofessional, and told Hernandez that he considered the matter closed.

Based on these facts, Hernandez filed his complaint in federal court on August 4, 1997, alleging that the defendants, while acting under color of state law, violated his rights under the First and Fourteenth Amendments of the United States Constitution by conspiring to cause him injury or harm and by engaging in a malicious prosecution, in violation of 42 U.S.C. § 1983. Hernandez also alleged libel and slander, as well as intentional infliction of emotional distress, under Illinois law.

Throughout August and September of 1996, the attorneys for the Will County defendants corresponded with Hernandez' counsel, David Cerda ("Cerda"), requesting that he dismiss the State's Attorney's Office from the action. In their letters, the Will County defendants cited numerous reasons in support of their dismissal, but they did not specifically refer to the argument that the State's Attorney's Office is immune from suit under the Eleventh Amendment of the United States Constitution. Despite these letters, Hernandez, for reasons unexplained in the record, never dismissed the State's Attorney's Office. Instead, he filed an amended complaint on October 27, 1997.

On November 26, 1997, the defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The Will County defendants' motion specifically pointed to the argument that the State's Attorney's Office is immune from suit under the Eleventh Amendment. On that same date, the

---

1. Billups stated he did not hear Hernandez threaten Stein.

2. The record does not reflect the difference between a police report and an informational report.

3. Hernandez believes the suggestion that Stein call his boss, implicated DeBoer in the conspiracy.

Will County defendants served Hernandez with a proposed motion for sanctions (as required by Rule 11) and a memorandum of law supporting their Eleventh Amendment immunity argument and contending that the claims filed against the State's Attorney's Office and DeBoer were not only meritless but also were without support in applicable law. After Attorney Cerda once again failed to dismiss the Will County defendants within the 21–day limit provided under Rule 11, the defendants filed a motion for sanctions. In his response to the motion for sanctions, even though Cerda acknowledged that he could not sue the Will County State's Attorney's Office, he still failed to dismiss the State's Attorney's Office. Thus, the Office continued to remain a party to this action until such time as the trial judge ruled on the defendants' motions to dismiss and found that the State's Attorney's Office was immune from suit.

Upon motion of the State's Attorney's Office, the judge also imposed sanctions against Attorney Cerda for his pursuit of the frivolous claims against the State's Attorney's Office and for his failure to timely dismiss the Office after receiving the motion to dismiss and the proposed motion for sanctions. The court reasoned that a reasonable inquiry by Cerda prior to his filing of both the complaint and amended complaint would have revealed the claims to be meritless or, at the very least, Cerda should have dismissed the State's Attorney's Office after the Office called Cerda's attention to the Eleventh Amendment argument in its motion to dismiss and its accompanying motion for sanctions. Cerda objected to the sanctions award in a Motion for Reconsideration but, upon review, the trial judge upheld the imposition of sanctions and ordered Cerda to pay $4,226.64, the amount the County incurred in defending the original action and the sanctions award.

On July 7, 1998, Ruettiger, Stein, and DeBoer filed motions for summary judgment on Hernandez' surviving claim under 42 U.S.C. § 1985(3). The court granted the respective defendants' motions on September 9, 1998, finding that there was no evidence of a conspiracy on the part of the defendants, nor was there evidence that any of the defendants took any action against Hernandez because of his race. The court declined to exercise supplemental jurisdiction over Hernandez' state law claims. Hernandez and Cerda appeal.

## II. ISSUES

On appeal, we consider: (1) whether the district court erred in granting the defendants' motion to dismiss Hernandez' § 1983 claims; (2) whether the district court erred in granting the defendants' motion for summary judgment on Hernandez' conspiracy claims under § 1985(3); (3) whether the district court abused its discretion in sanctioning Cerda under Rule 11 for filing a frivolous claim against the Will County State's Attorney's Office; and (4) whether the district court abused its discretion in awarding the Will County State's Attorney's Office's entire fee petition for Cerda's Rule 11 violation. We also consider the Will County defendants' Motion for Sanctions under Rule 38 of the Federal Rules of Appellate Procedure against appellants Hernandez and Cerda, and appellants' cross-Motion for Rule 38 Sanctions against James Sotos, attorney for the Will County defendants.

## III. DISCUSSION

### A. *Hernandez' claims under 42 U.S.C. § 1983*

Initially, Hernandez asks this Court to resurrect his claims against the defendants under 42 U.S.C. § 1983. Hernandez contends that the court committed error in granting the defendants' motions to dismiss his § 1983 claims, and furthermore that it erred in analyzing his § 1983 claim as a Fourth Amendment malicious prosecution claim. Hernandez further argues, as he did in the trial court, that he had stated a viable § 1983 claim under the rule

of *Sherwin Manor Nursing Center v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994), that "[t]o state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group."

■ This Court reviews a trial court's ruling on a motion to dismiss *de novo*, accepting "the truth of all well-pleaded allegations and making all possible inferences in favor of the plaintiff." *Id.* at 1219 (citations omitted). A dismissal should not be granted unless this Court finds "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

■ Even if analyzed as an Equal Protection, rather than a malicious prosecution, action, as Hernandez wishes us to do, we are convinced that the district court's dismissal of Hernandez' § 1983 claim for failure to state a claim was proper because unlike the plaintiff in *Sherwin Manor*, Hernandez has failed to make an allegation that he was subjected to a special administrative burden or process because of his national origin. He was never charged with a crime, much less even arrested, as a result of Officer Ruettiger's filing of the informational report. In fact, all that resulted was a phone call from Stein to Hernandez' supervisor, who determined that Stein's reporting of the incident was not only inappropriate, but unprofessional and unwarranted, and dismissed it. Under the circumstances of this case, this combination of events fails to qualify as "a special administrative burden" under *Sherwin Manor* and thus does not qualify as an actionable Equal Protection claim.

■ Hernandez next argues that even absent extraordinary governmental scrutiny, Officer Stein's phone call to his employer alone establishes a § 1983 violation. According to Hernandez, when Stein disclosed the contents of the allegedly false police report to Levek, Hernandez' rights were violated because he had to answer to his boss for the alleged misbehavior, thus causing him to suffer increased stress and tension at work.

Hernandez' argument necessarily fails under *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul*, the Supreme Court held that slander is not actionable under a constitutional tort theory: "the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty. . . ." *Id.* at 702, 96 S.Ct. 1155. Accordingly, under *Paul*, the fact that Stein allegedly defamed Hernandez to his employer is insufficient to state a cause of action under § 1983. Thus, we are of the opinion that the trial court's dismissal of Hernandez' claim under 42 U.S.C. § 1983 was proper.

### B. Hernandez' claims under 42 U.S.C. § 1985(3)

■ The trial court found that Hernandez failed to present evidence sufficient to establish a civil conspiracy under § 1985(3). Additionally, the trial court held that the evidence demonstrated that Ruettiger used the term "nigger" on but one occasion (in 1989) and that Stein occasionally used the terms "nigger" and "spic," but failed to establish that any of the three defendants ever used racially derogatory terms in reference to Hernandez. Based on these facts, the court held that none of the evidence, or even a combination of Hernandez' unsupported allegations, would permit a finding that any of the defendants took the actions Hernandez complained of based on his race.

This Court reviews a district court's ruling on a motion for summary judgment *de novo*. *See Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir.1998). "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.* (citations omitted). While courts must construe the facts in the light most favorable to the non-moving party, the mere existence of an alleged factual dispute between the parties falls far short of being sufficient to defeat a motion for summary judgment. *Id.*

Hernandez contends that the trial court erred in granting the summary judgment motions of Ruettiger, Stein, and DeBoer against him on his civil conspiracy claims under 42 U.S.C. § 1985(3). He claims that although the trial judge recognized that Officer Stein occasionally used racist terms and Officer Ruettiger used the term "nigger" on one occasion, the court proceeded to ignore allegations that Hernandez heard Stein criticize the Afro–Latino Policemen's Association using derogatory racial terms and that Stein was opposed to affirmative action. Plaintiff-Appellant Hernandez also argues that as a result of the district court ignoring these allegations, it failed to recognize the nexus between the racist terms and the actions taken by the defendants against Hernandez. According to Hernandez, Stein participated in all aspects of the conspiracy because, in the 1980's, Hernandez successfully advocated an affirmative action plan to which Stein was opposed. Under Hernandez' theory, Ruettiger also participated in the conspiracy because of his animosity toward African Americans, whom Hernandez had helped in securing an affirmative action plan for the Department. Finally, Hernandez claims, DeBoer participated in the conspiracy knowing that the police report was false and that it would likely aggravate Hernandez' emotional distress for Stein to call his boss to discuss the report. Thus, Hernandez states, summary judgment was improperly granted because the evidence presented could lead a reasonable jury to conclude that Ruettiger, Stein, and DeBoer participated in a conspiracy to ruin his life in violation of 42 U.S.C. § 1985(3).

In order to state a claim under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir.1996) (citations omitted).

In order to establish the existence of a conspiracy, the first element required in a § 1985(3) claim, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him. *See Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). The conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator. *Id.* The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives. *Id.*

There is no evidence in the record to support an inference that defendants Ruettiger, Stein, and DeBoer conspired in a single plan to inflict injury or harm on Hernandez. The meeting at the courthouse between Hernandez and Billups (which Officer Ruettiger overheard), which supposedly was the first step in the conspiracy, happened by chance even according to Hernandez. Hernandez has failed to present any evidence, much less even an allegation, that Officer Stein somehow engineered the encounter so that he could later have an informational police report written regarding the meeting. There is also no evidence that Ruettiger and Stein had anything more than a working relationship; in other words, nothing in this record explains why Ruettiger would go

out on a limb to prepare a false police report at Stein's behest.

Hernandez' conspiracy theory is also flawed because of the fact that no action resulted against him based on the referred to informational report. While an informational report was filed that said he threatened Stein, no unusual or administrative action followed that was detrimental or harmful. In fact, he was never arrested, charged, nor convicted for any offense contained in that report. According to DeBoer, there was not even indictable conduct contained in Ruettiger's informational report. In order to infer a plan "to ruin Hernandez' life," logic dictates that the would-be conspirators would have to have at least doctored the report to include some criminal offenses for which Hernandez could be charged. Instead, Hernandez argues, the best plan that these two police officers and the First Assistant State's Attorney could hatch to "ruin his life" was to file an informational report containing no indictable offenses. Thereafter, according to Hernandez, the three defendants further conspired and placed a phone call to Hernandez' boss to discuss the contents of the report with him, all in an attempt to cause Hernandez injury or harm. After reviewing the record, we are convinced that these facts are insufficient to allow for a reasonable inference that these three defendants participated in any agreement to "ruin Hernandez' life."

Because the evidence of the existence of a conspiracy is insufficient, there is no need to analyze the other shortcomings of Hernandez' claim. Accordingly, we are of the opinion that the district court properly entered summary judgment in favor of the defendants on Hernandez' § 1985(3) claims.

## C. Rule 11 Sanctions

 Attorney Cerda appeals the district court award of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that he did not "miss an obvious point of law" in overlooking the argument that the suit against the Will County State's Attorney's Office was barred by the Eleventh Amendment. Cerda also claims that the trial judge erred in awarding the Will County State's Attorney's Office's entire fee petition.

 This Court reviews a trial court's decision to impose Rule 11 sanctions under an abuse of discretion standard, giving great deference to the court. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989) (en banc). A trial judge abuses his discretion in imposing sanctions under Rule 11 only when it bases its decision on an erroneous view of the law or an erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

The trial court imposed Rule 11 sanctions on Cerda after finding that Hernandez' complaint against the Will County State's Attorney's Office was frivolous and that basic research into suits against an Illinois state's attorney's office would have revealed that such actions are barred by the Eleventh Amendment. Furthermore, the judge found that in the very least, Hernandez should have dismissed the State's Attorney's Office after having been made aware of their immunity argument and after receiving the Office's proposed motion for sanctions (which it served on Hernandez more than 21 days prior to filing the motion, as required under Fed. R.Civ.P. 11(c)(1)(A)). Instead, Hernandez took no action, but sat back and improperly waited for the court to rule on the defendants' motion to dismiss. After reviewing the record, the district court determined that Rule 11 sanctions were appropriate because Hernandez should have known both through a reasonable inquiry before filing his complaint and through the notice provided in the State's Attorney's Office's motion to dismiss and motion for sanctions that Hernandez' claims were meritless. Finally, the court awarded the full amount of the Office's fee petition,

finding that the $4,226.64 amount would serve to deter future violations by Hernandez' counsel, Attorney Cerda.

 It is more than obvious that Hernandez did overlook an obvious point of law in filing suit against the Will County State's Attorney's Office. "The Eleventh Amendment prohibits courts from deciding suits brought by private litigants against states or their agencies." *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir.1994). In *Garcia*, this Court noted that the Illinois Supreme Court has held that state's attorneys are state officials. *Id.*, *citing Ingemunson v. Hedges*, 133 Ill.2d 364, 140 Ill.Dec. 397, 549 N.E.2d 1269, 1272 (Ill. 1990). We agree with the trial judge and conclude that Hernandez had no basis in law with which to support his claims against the State's Attorney's Office, in fact he admitted as much in his response to the Office's Motion to Dismiss.

Cerda next argues that the district court abused its discretion in imposing Rule 11 sanctions because, even though he did not dismiss the State's Attorney's Office, he conceded their immunity in his responsive brief. In reviewing its decision to impose sanctions upon Hernandez' Motion for Reconsideration, the court reasoned that this failure to dismiss the State's Attorney's Office caused the Office to incur additional unnecessary attorney's fees and costs for no good reason.

Federal Rule of Civil Procedure 11(c) requires that a motion for sanctions be served on an offending party at least 21 days before it is filed with the court. This rule gives a party a chance to correct his errors before sanctions are sought or imposed. If the offending party corrects his errors within the 21–day window, the motion for sanctions may not be filed with the court. *See id.*

 Pursuant to the rule, counsel for the State's Attorney's Office served Cerda with its proposed motion for sanctions and the supporting memorandum of law on November 26, 1997. It was only after Cerda failed to take any corrective action within this 21–day period that the motion for sanctions was filed with the court. It seems evident from the record that Cerda could have avoided any sanctions despite his seemingly inadequate pre-filing inquiry if he had simply voluntarily dismissed the State's Attorney's Office within this 21–day period. He has offered no reason why he failed to take advantage of the 21–day period for corrective action, nor for why he failed to file a motion to voluntarily dismiss the Office after the Eleventh Amendment argument was made clear to him, and the trial judge was unable to find any good reason for Cerda's failure to take action. Accordingly, we are of the opinion that the district court did not abuse its discretion in sanctioning Cerda for his failure to conduct an adequate pre-filing inquiry and for his failure to dismiss the State's Attorney's Office after he was made aware that the claims against them were meritless.[4]

### D. Motions for Sanctions under Rule 38

 After briefs were submitted on this appeal, both the Will County defendants and Cerda moved for damages and costs pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Rule 38 states: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." In *Spiegel v. Continental Illinois National Bank*, 790 F.2d 638 (7th Cir.1986), we stated, "an appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit." *Id.* at 650 (citations omitted). Although the appellants have failed to provide us with a basis for overturning the district court's decision, we do not believe the appeal was frivolous. The appellants raised substantial, if non-meritorious, legal challenges to the district court's granting of summary judgment and award-

---

4. For the same reasons discussed previously, we refuse to hold that the trial judge abused his discretion in imposing a $4,226.64 sanction against Cerda.

ing fees and costs. Because the appellants' arguments created some conceivable chance of reversal, we do not consider this is an appropriate case for sanctions. Therefore, we deny both parties' motions for Rule 38 sanctions and order that each party bear its own costs.

## IV. CONCLUSION

We hold that the district court did not err in granting the defendants' motion to dismiss Hernandez' § 1983 claims and in granting the defendants' motion for summary judgment on Hernandez' conspiracy claims under § 1985(3). Furthermore, we hold that the district court did not abuse its discretion in sanctioning Cerda under Rule 11 for filing a frivolous claim against the Will County State's Attorney's Office and that the court did not abuse its discretion in awarding the Will County State's Attorney's Office's entire fee petition for Cerda's Rule 11 violation. We deny both parties' motions for Rule 38 sanctions.

AFFIRMED.