Maurice **CURRY**, Plaintiff,

v.

David **PULLIAM**, Superintendent, et al., Defendant.

No. NA 00–77–C B/H.

United States District Court, S.D. Indiana, New Albany Division.

Dec. 12, 2002.

Aubrey Williams, Louisville, KY, for Plaintiff.

William H. Kelley, Kelley Belcher & Brown P C, Bloomington, IN, Sandra W. Lewis, Jeffersonville, IN, for Defendant.

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

### I. *Introduction.*

This is an employment discrimination case which, shorn of its collateral claims and issues, alleges that the plaintiff was terminated from his employment on the basis of his race. The case is before us on defendants' motion for summary judgment, which we GRANT for the following reasons.

### II. *Statement of Facts.*

Maurice Curry is an African–American who was hired by Greater Clark County School System in September 1984. He served as a custodian at Thomas Jefferson Elementary School for fifteen years until his termination in December 1999. PSOMF ¶ 1.[1] On May 17, 1999, Beverley Hennegan, a teacher at Thomas Jefferson and daughter-in-law of school board member Michael Hennegan, filed a written complaint alleging that Mr. Curry sexually harassed her. DSOMF ¶¶ 5, 6; PSOMF, ¶ 2. She complained, more specifically, that Mr. Curry made "inappropriate comments," committed an "inappropriate touching," and created a "hostile environment." DSOMF ¶ 7.

Margaret Shea, Director of Administrative Support for the school district conducted an investigation into Ms. Hennegan's allegations. Ms. Shea and Richard Klemens, Principal of Thomas Jefferson school, issued a report pursuant to their investigation. DSOMF ¶ 9; Def. Req. for Production Ex. 5. The report indicates that Ms. Shea interviewed eleven individuals about Ms. Hennegan's allegations. It concluded that Mr. Curry said to Ms. Hennegan, among other things, that he would like to have his body next to hers, he could only imagine what it would like to be with her, asked her out to lunch, and told her that he would like to rub her leg. *Id.* He

---

**1.** Both parties submitted factual statements pursuant to the version of Local Rule 56.1 in effect at the time the case was filed. We abbreviate Plaintiff's statement of material fact as PSOMF and defendant's as DSOMF.

also hugged her and kissed her cheek, notwithstanding her rejection of these overtures. *Id.*

Principal Klemens notified Mr. Curry in a letter of August 13, 1999 that he was going to recommend Mr. Curry's termination and suspended Mr. Curry pending his recommendation. PSOMF ¶ 4; Pl.Ex. 1. Superintendent Pulliam notified union representative Harold Wolff of the proposed termination and in his letter outlined the reasons for the action. The reasons included events that had occurred as early as February 1993 and culminated in Ms. Hennegan's allegations of sexual harassment. Pl.Ex. 2.

Principal Klemens' recommendation to terminate Mr. Curry was taken to an evidentiary hearing on October 19, 1999, before Robert Fields, President of the Board of School Trustees. Mr. Curry was represented at the hearing by representatives of the union and also testified on his own behalf. DSOMF ¶¶ 13–15. After the hearing, Mr. Fields issued findings of fact and conclusions of law. He found, in sum, that Mr. Curry had engaged in acts of misconduct, including unwelcome and inappropriate comments and touching of a sexual nature as alleged by Ms. Hennegan. DSOMF ¶ 19. Before his termination on December 7, 1999, Mr. Curry made an oral statement in executive session in response to Mr. Fields' findings. DSOMF ¶ 23.

### III. *Discussion.*

#### A. *The Standard on Summary Judgment.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,* 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable factfinder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First*

*Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Waldridge*, 24 F.3d at 920.

B. *Mr. Curry's Section 1983 Causes of Action.*

 Mr. Curry alleges several causes of action pursuant to 42 U.S.C. § 1983 in addition to his Title VII claim. Section 1983 was designed to provide legal recourse to individuals who are deprived of a federally-protected right under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707, 119 S.Ct. 1624, 1637, 143 L.Ed.2d 882 (1999); *Conn v. Gabbert*, 526 U.S. 286, 289, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999). "To state a claim under § 1983, the moving party must demonstrate that the defendant deprived him of a right secured by the Constitution and that in doing so the defendant acted under color of state law." *White v. City of Markham*, 310 F.3d 989, 997 (7th Cir.2002). Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Mr. Curry's section 1983 claims include: (1) actions against several government officials in their official capacities; (2) actions against several government officials in their individual capacities; (3) a conspiracy between or among the named individuals to deprive him of his rights;[2] (4) a claim that Mr. Curry was denied due process with respect to his termination; (5) a claim that Greater Clark violated state law and the collective bargaining agreement by using events in Mr. Curry's disciplinary history that were more than two years old; and (6) a claim pursuant to the Equal Protection clause of the Fourteenth Amendment alleging that Mr. Curry was deprived of his position on the basis of his race. We address these claims here, except for the Equal Protection claim, the analysis of which is, for present purposes, identical to the analysis of Mr. Curry's Title VII claim. We defer that analysis to the appropriate section below.

1. *Mr. Curry's Claims Against Named Individuals.*

 All of Mr. Curry's claims against individuals—whether in their official or individual capacity—are subject to summary adjudication as a matter of law. First, all of the individuals must be dismissed in their "official" capacities because official capacity actions are redundant where, as here, the entity for which the individuals worked is named. In a case such as this one, the conduct of the named employees in their official capacities *is* the conduct of Greater Clark, and the Eleventh Amendment simply does not allow damages suits against states, state agencies, or state employees acting in their official capacities. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105

---

**2.** Mr. Curry does not specify whether this claim arises under 42 U.S.C. § 1983 or its companion provision section 1985(3). We address it under the standards that have evolved pursuant to section 1985(3).

L.Ed.2d 45 (1989); *Brokaw v. Mercer County,* 235 F.3d 1000, 1009 (7th Cir.2000); *Gossmeyer v. McDonald,* 128 F.3d 481, 487 (7th Cir.1997). In sum, it is sufficient that Mr. Curry has named the employer; the claims against the individuals named in their official capacities are dismissed.

■ Second, all of the named individuals must be dismissed in their "individual" capacities as well. As far as Mr. Curry's Title VII claim is concerned, that statute does not permit an action against individuals, even when the individuals are supervisory employees of the employer. *Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 493 (7th Cir.1998); *Geier v. Medtronic, Inc.,* 99 F.3d 238, 244 (7th Cir.1996); *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995). Once again, it is enough to name the employer itself.

■ As to Mr. Curry's individual capacity claims under section 1983, while that statute authorizes actions against individuals, it also requires individualized proof that the named official was directly responsible for the improper conduct, *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983), and "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986). *See McPhaul v. Board of Com'rs of Madison County,* 226 F.3d 558, (7th Cir.2000). Even assuming that Mr. Curry has presented evidence that his rights have been violated, he has made no allegation that any of the named individuals meet the criteria for individual liability pursuant to section 1983. Nor has he presented evidence from which a jury could reasonably infer that any of the named individuals "knowingly," "willfully," or "recklessly" caused the deprivation of his rights.

It follows that there is no basis for individual liability—whether official or individual capacity—pursuant to any of Mr. Curry's causes of action.

2. *Mr. Curry's Due Process Claim.*

■ Mr. Curry alleges that he was deprived of his rights without due process. He does not tell us whether he means to assert a substantive or procedural due process claim. We conclude, however, that if he has any due process cause of action at all, it must be procedural in nature. Although defendants have addressed his claim as if it might be substantive, the Seventh Circuit, following the Supreme Court, has held that a party may not plead a substantive due process cause of action when he has already pled a cause of action alleging a specific Constitutional claim. *Eby–Brown Co. LLC v. Wisconsin Department of Agriculture,* 295 F.3d 749, 754 (7th Cir.2002) (When "a particular amendment [like the equal protection clause] 'provides an explicit textual source of constitutional protection against a particular source of government behavior,' that amendment and not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' "), *citing Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Daniels v. Area Plan Com'n of Allen County,* 306 F.3d 445, 458–459 (7th Cir.2002) ("Substantive due process analysis has no place in contexts already addressed by explicit textual provisions of constitutional protection, regardless of whether the plaintiff's potential claims under those amendments have merit."), *citing Armendariz v. Penman,* 75 F.3d 1311, 1325–26 (9th Cir.1996). Mr. Curry has no recourse here to substantive due process because he has already alleged that he was deprived of his rights in violation of the Equal Protection clause of the Fourteenth Amendment.

■ In order to state a viable procedural due process claim, Mr. Curry must

show that he has a protected life, liberty or property interest at issue and that the state failed to provide the process due him under the Constitution. *See Gustafson v. Jones,* 117 F.3d 1015, 1020 (7th Cir.1997); *Johnson v. City of Fort Wayne,* 91 F.3d 922, 942–943 (7th Cir.1996). Protected property interests are governed by state law; they may arise from a statute, regulation, ordinance, or contract—that is, from "rules and understandings that secure certain benefits and that support claims of entitlement to those benefits." *Johnson,* 91 F.3d at 943, *quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

▆▆▆ Defendants acknowledge that Mr. Curry had a protected property interest in his job. Def. Brief, p. 20. And, indeed, a collective bargaining agreement, such as the one governing the relationship between the school district and its unit employees, may provide a basis for a protected property interest in employment. *Wallace v. Tilley,* 41 F.3d 296, 299 (7th Cir.1994); *Cushing v. City of Chicago,* 3 F.3d 1156, 1159–1160 (7th Cir.1993); *Tweedall v. Fritz,* 987 F.Supp. 1126, 1130 (S.D.Ind.1997).

▆▆▆ Still, Mr. Curry has presented insufficient evidence to raise a reasonable inference that he was deprived of his property interest without due process. The "essentials of due process" include notice of an adverse action and an opportunity to respond. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Sonnleitner v. York,* 304 F.3d 704, 711 (7th Cir. 2002). One means an employer may use to satisfy an employee's due process rights is to conduct a pre-termination hearing. Such a hearing need not be elaborate to satisfy the minimum standards of due process. It "need not constitute a full evidentiary hearing that definitively resolves the propriety of the discharge, so long as it serves as 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Greer v. Amesqua,* 212 F.3d 358, 367 (7th Cir.2000), *quoting Loudermill,* 470 U.S. at 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494.

It is undisputed here that Superintendent David Pulliam notified Mr. Curry by letter of August 13, 1999 that he was going to recommend Mr. Curry's termination to the Board of Trustees. Pl.Ex. 1. On October 19, 1999, Robert Fields, President of the Board of School Trustees, held an evidentiary hearing on the allegations that Mr. Curry's conduct warranted termination. Mr. Curry asked to be heard at the hearing and he was in fact heard. Mr. Curry was represented at the hearing by two union representatives. Mr. Fields issued a ten page written opinion setting forth findings of fact and conclusions of law and concluding that Mr. Curry's conduct warranted termination. Pl.Ex. 3. Mr. Curry was permitted to make an oral presentation in executive session on December 7, 1999 before his termination was finalized. The School Board's hearing satisfied the requirements of due process.

Mr. Curry argues that the hearing was, in effect, a kangaroo court because the outcome was predetermined. Manifestly, if a public employer holds a sham hearing, the terminated employee has not been accorded due process and his claim should survive summary judgment. *Ryan v. Illinois Department of Children and Family Services,* 185 F.3d 751, 762–763 (7th Cir. 1999). But Mr. Curry must do more than merely assert that the decision to terminate him was made before the hearing. He must offer evidence from which a reasonable trier of fact could infer such a

conclusion. That he has not done.[3] In sum, there simply is no basis in the record for us to conclude that Mr. Curry was not accorded all of the process he was due before he was terminated.

### 3. *Mr. Curry's Conspiracy Claim.*

■ Mr. Curry alleges that defendants conspired to deprive him of his right to be free from employment decisions made on the basis of his race. He does not specify the basis of his claim, but we infer from the nature of the claim that he seeks enforcement of his rights pursuant to 42 U.S.C. § 1985. Section 1985 descends from the Civil Rights Act of 1871, which is commonly called the Ku Klux Klan Act.[4] *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 109 (7th Cir. 1990), *citing Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Its evidentiary requirements are stringent. The Seventh Circuit recently reiterated them in *Green v. Benden*, 281 F.3d 661, 665–666 (7th Cir.2002), which we cite at length:

> To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or

privilege granted to U.S. citizens. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir.1999). The plaintiff also must show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir.1996). To establish the existence of a conspiracy, a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator. *Hernandez*, 197 F.3d at 263. Agreement may be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives. *Id.*

Mr. Curry has not satisfied the evidentiary standard required to survive summary judgment on his conspiracy claim. He asserts that "the defendants" conspired to deprive him of his rights, but provides no evidence of any conspiracy, much less that two or more persons "agreed to inflict

---

**3.** Obviously, Dr. Pulliam made a tentative or preliminary determination that Mr. Curry should be terminated for misconduct before submitting his recommendation to the hearing officer. We cannot infer from that preliminary finding, however, that the outcome of the hearing was predetermined. It is difficult to imagine an employer initiating a pretermination hearing absent a preliminary finding that the employee's conduct warranted termination. *See Ryan*, 185 F.3d at 762.

**4.** Section 1985(3) provides in pertinent part: If two or more persons . . . conspire for the purpose of depriving, either directly or indi-

rectly, any person or class of persons of the equal protection of the laws . . . [or] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

injury upon him." He asserts with somewhat greater specificity that Mickey and Beverley Hennegan conspired to deprive him of his rights. But even if we assumed—without a shred of evidence to support these assumptions—that Ms. Hennegan and her father-in-law agreed to deprive Mr. Curry of his employment, there is still no evidence that Mr. Hennegan played any role in Mr. Curry's termination or that Ms. Hennegan did anything other than complain about Mr. Curry's conduct. While Mr. Hennegan was a member of the Board, the only evidence presented on the record establishes that Ms. Shea and Mr. Klemens conducted the investigation into Mr. Curry's alleged misconduct and that Mr. Fields conducted the pre-termination hearing. In sum, Mr. Curry has presented insufficient evidence to raise an inference that two or more people conspired to deprive him of his property interest on the basis of his race.

## C. Race Discrimination Pursuant to Title VII and Equal Protection Clause.

██ At the heart of this case is Mr. Curry's claim that he was discharged from employment because of his race. Since Greater Clark is a public employer, Mr. Curry has parallel causes of action under Title VII and the Equal Protection clause. Analysis of employment discrimination claims under both federal provisions is virtually identical.[5] Nanda v. Board of Trustees of University of Illinois, 303 F.3d 817, 829–830 (7th Cir.2002) ("[B]oth the aim of Title VII, as well as the method for proving violations of Title VII, are the same as those of the Equal Protection

Clause."); McPhaul v. Board of Com'rs of Madison County, 226 F.3d 558, 566 n. 6 (7th Cir.2000) ("Because section 1983 claims generally follow 'the contours of Title VII claims,' we will apply the same 'hostile environment' standard that is applied in Title VII cases.").

Since Mr. Curry has no direct evidence of discrimination, he may prove his case indirectly through the burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

If Mr. Curry presents evidence sufficient to establish a prima facie case, he will have raised a presumption of discrimination which Greater Clark must rebut by producing evidence of a legitimate nondiscriminatory explanation of its adverse employment action. Once it does, Mr. Curry must establish that the reasons proffered by the defendant were pretextual. To prove pretext, Mr. Curry must present admissible evidence from which a trier of fact may reasonably infer that his race played a role in the challenged action or that the employer offered a phoney explanation for its adverse employment action. See Freeman v. Madison Metropolitan School Dist., 231 F.3d 374, (7th Cir.2000); Stewart v. Henderson, 207 F.3d 374, 376

---

5. If anything, an Equal Protection claim is subject to a more stringent standard, according to which a plaintiff must show, among other things, that he "is otherwise similarly situated to members of the unprotected class," that he "was treated differently from members of the unprotected class," and that

the defendants acted with discriminatory intent. McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir.1993); Sims v. Mulcahy, 902 F.2d 524, 539 (7th Cir.), cert. denied, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990).

(7th Cir.2000).[6]

### 1. *Mr. Curry's Prima Facie Case.*

In order to establish a prima facie case of race discrimination using the indirect method, Mr. Curry must present evidence that: he is a member of a protected class; he performed his job duties satisfactorily; he suffered an adverse employment action; and the school district treated similarly-situated employees outside his protected class more favorably. *Brummett v. Lee Enters., Inc.,* 284 F.3d 742, 744 (7th Cir. 2002).

■ Greater Clark would have us find that Mr. Curry cannot establish a prima facie case because he was not performing his job satisfactorily because he engaged in the sexual harassment of Ms. Hennegan. After all, it claims, Mr. Curry was not hired to harass female co-workers. While that point is true enough, it tends to create a Catch 22 where, as here, the employee alleges either that the employer applied otherwise neutral employment criteria in a discriminatory manner or that the employer trumped up the alleged performance deficiency (here, the harassment). In other words, where, as here, the adverse employment decision is supposedly based on the employee's performance, the second prong of the prima facie case—whether the employee was performing his job satisfactorily—amounts to the same issue as the issue on pretext: whether the employer gave an honest explana-

tion of its adverse decision. *See, e.g., Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir.1998) (noting the overlap between the factual inquiry relevant to the employer's "legitimate expectations" and the proof of pretext); *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 864 (7th Cir.1996).

■ Still, Mr. Curry has failed to establish a prima facie case because he did not introduce evidence that similarly-situated employees not of his race were treated more favorably. *Bellaver v. Quanex Corp.,* 200 F.3d 485, 494 (7th Cir.2000). Mr. Curry's prima facie case consists of the facts that he is African American, he engaged in light sexually-oriented banter with Ms. Hennegan, and he was fired. In other words, Mr. Curry suffers from the plight of having no comparative evidence because he can point to no comparators.

We are reluctant to dismiss a case at the prima facie stage for failure to provide comparative evidence. It is possible, after all, that no white janitor in the Greater Clark system has ever been accused of sexually harassing a white female teacher and that the lone black was accused because of his race. The absence of comparative evidence alone should not prevent Mr. Curry from proceeding. Mr. Curry claims that he engaged in innocent banter with Ms. Hennegan and that he was terminated because he is a black man who made a pass at a white woman. Since the dispute is over the second (performance)

**6.** The Seventh Circuit has held, similarly, for purposes of an Equal Protection claim: "Like the prohibition of the Equal Protection Clause, this language is aimed at intentional discrimination, and [t]o prove a violation of this provision, a plaintiff must proffer either direct or indirect evidence of the employer's discriminatory intent." *Bennett v. Roberts,* 295 F.3d 687, 694 (7th Cir.2002). When using the indirect method, the plaintiff establishes a prima facie case of discriminatory

intent by showing: (1) "that she belongs to a protected category; (2) that she suffered an adverse employment action; (3) that she was meeting her employer's legitimate expectations; and (4) similarly situated individuals not in a protected category were treated more favorably by the employer." *Maarouf v. Walker Mfg. Co.,* 210 F.3d 750, 752 (7th Cir. 2000). *Nanda v. Board of Trustees of University of Illinois,* 303 F.3d 817, 829–830 (7th Cir.2002).

prong of the prima facie case and since Greater Clark has, in any event, offered a legitimate, non-discriminatory explanation of its discharge we address the question of whether its explanation is pretextual. *Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir.1999); *EEOC v. Our Lady of the Resurrection Medical Center*, 77 F.3d 145, 149 (7th Cir.1996); *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir.1985) ("The prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination.").

### 2. *Mr. Curry's Evidence of Pretext.*

■ Greater Clark asserts that it fired Mr. Curry for a multitude of sins. The proximate cause of his discharge may have been Ms. Hennegan's May 17, 1999 complaint that Mr. Curry harassed her. But the district goes to great (one might say excessive) lengths to show that Ms. Hennegan's complaint was merely the last straw. It reaches back to 1993 to resurrect what appears to be every incident that might conceivably be construed as misconduct on Mr. Curry's part.[7] Indeed, Mr. Curry alleges that Greater Clark goes to such lengths because without the earlier incidents it would have no basis for discharging him. It follows, he argues, that Greater Clark's reference to so many incidents—in a manner contrary to the collective bargaining agreement—is itself evidence that it was trumping up a basis for firing him.

We are not unsympathetic to the contention that Greater Clark's piling on may be evidence of the employer's guilty conscience. Calling attention *fifteen years after the fact* to Mr. Curry's listing of his mother as a reference on his employment application doesn't pass the red face test as a reason for terminating his employment. We wonder if the district may have gone to such lengths in fear that, under the collective bargaining agreement, the one incident of sexual harassment may not have been sufficient to warrant a discharge for just cause.

But this is not an action for breach of contract. Mr. Curry points to the Board's misuse of prior discipline not as a separate cause of action for breach of the collective bargaining agreement, but as evidence of pretext in support of his employment discrimination claim. Count I of his complaint states that defendants falsely accused him of sexually harassing

---

7. The district itemizes the following reasons for discharging Mr. Curry: In February 1993 he was reprimanded for tardiness and inappropriate conduct. On September 4.1997, Principal Klemens directed Mr. Curry not to leave the building. In the fall of 1997, Principal Klemens informed Mr. Curry that another employee had complained that Mr. Curry had made an inappropriate remark. In April 1998, Principal Klemens gave Mr. Curry a written reprimand for failing to empty a trash container, failing to report to work in time to open the cafeteria for a meeting, and for making an inaccurate statement on his application for a different position in the school system. On June 9, 1998 Principal Klemens rebuked Mr. Curry for leaving the building without permission. On June 22, 1998, Principal Klemens presented Mr. Curry a performance evaluation rating Mr. Curry as "average" overall and below average in his ability to attract respect from others. On May 21, 1999, Principal Klemens presented Mr. Curry with a similar performance evaluation, this one indicating that he was failing to meet directives. On April 13, 1998, Superintendent Pulliam issued Mr. Curry a written reprimand and a five day suspension for falsifying time sheets. On his 1984 employment application, Mr. Curry listed his mother as a reference, notwithstanding the fact that the application asked for the names of two references not including relatives. And in May 1999, Ms. Hennegan complained of "inappropriate sexual comments and gestures." DSOMF ¶ 17.

Ms. Hennegan (Complaint ¶ 9) and then "reached back into Plaintiff's employment history for other reasons to justify his dismissal in an attempt to cover up defendant's illegal motive, namely, to punish him for allegedly making a pass at Beverley Hennigan, a white woman...." Complaint ¶ 10. Union president and chief Steward Harold Wolff testified that, under the collective bargaining agreement, "negative matters" in an employee's work record may not be used after twenty-four months, so that the trustees violated the contract when it invoked incidents that had occurred six years earlier. Wolff Aff. ¶¶ 4, 5. We may assume that Mr. Wolff's testimony is accurate and still conclude that it is largely (though not completely) irrelevant to the issue of pretext because the question of whether the Board violated the agreement in terminating Mr. Curry's employment is not at issue here.

Apart from the fairness or unfairness of dredging up old issues with respect to Mr. Curry's employment with Greater Clark, even if we pay no credence whatever to any of the earlier incidents and focus entirely on Greater Clark's explanation that it fired Mr. Curry because he harassed Ms. Hennegan, if Mr. Curry cannot present evidence sufficient to raise a reasonable inference that that explanation is false, he cannot survive summary judgment. In other words, Mr. Curry must show that Greater Clark's explanation is pretextual.

To accomplish that aim, Mr. Curry must present evidence from which a jury might reasonably infer that the reason had no basis in fact, or if it did have a basis in fact that it was not the real reason, or that it was the real reason but it was insufficient to warrant the termination. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996). *Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir.2002); *Velasco v. Illinois Dept. of Human Serv.*, 246 F.3d 1010, 1017 (7th Cir.2001). A pretext is not an imprudent or unwise decision; it is "a dishonest explanation, a lie rather than an oddity or an error." *Peters v. Renaissance Hotel Operating Company*, 307 F.3d 535, 545 (7th Cir.2002); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir.2000); "Because a Title VII claim requires intentional discrimination, the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." *Helland v. South Bend Community Sch. Corp.*, 93 F.3d 327, 330 (7th Cir.1996). In other words, in order to rebut Greater Clark's explanation for terminating him, Mr. Curry must present evidence raising an inference that Greater Clark did not honestly believe its explanation. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001).

Mr. Curry has not presented such evidence. He argues that he merely engaged in light banter with Ms. Hennegan. That may well be true. But the district conducted an extensive investigation into Ms. Hennegan's allegations—including eleven interviews—and concluded, as we noted earlier, that Mr. Curry said to Ms. Hennegan, among other things, that he would like to have his body next to hers, he could only imagine what it would be like to be with her, asked her out to lunch, and told her that he would like to rub her leg. *Id.* He also hugged her and kissed her cheek, notwithstanding her rejection of these overtures. *Id.* Mr. Curry's mere denial that he engaged in this conduct, or his minimalizing of its significance, is not enough to raise an inference of pretext. To show that Greater Clark's explanation is a pretext, Mr. Curry must show that Greater Clark did not believe that Mr. Curry actually engaged in this conduct, and on that he has presented no evidence.

Mr. Curry maintains that he may adduce evidence of Greater Clark's pretext by showing that the administrative law judge in his successful unemployment compensation hearing held that Greater Clark failed to prove that it discharged him for reasons associated with his work performance. However, Mr. Curry cannot rely on the ALJ's decision in his unemployment compensation proceeding. The ultimate question at issue in the unemployment compensation hearing—whether Mr. Curry was fired for "just cause" (a term of art pursuant to the unemployment compensation statute)—is not the same as the ultimate question in this case: whether Greater Clark fired Mr. Curry on the basis of his race. Moreover, Greater Clark bore the burden of proof in the unemployment compensation hearing, whereas Mr. Curry bears the burden of proof in this employment discrimination suit. In sum, the asymmetry between the two proceedings precludes reliance on the unemployment hearing here. *See McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 797 (7th Cir. 1997).

## IV. *Conclusion.*

Having failed to present legally sufficient evidence to support any of his claims, Mr. Curry's case is subject to summary dismissal Accordingly, we GRANT defendant's motion for summary judgment as to all claims.